U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE STATE OF VERMONT

2022 OCT 18  PM 4: 27

CLERK

BY

DEPUTY CLERK

LINDA LUXENBERG and
KELCEY LUXENBERG, as Guardians and next
best friends of JOHN DOE; and
LINDA LUXENBERG, for herself,
    Plaintiffs,

            v.

VERMONT DEPARTMENT OF DISABILITIES,
AGING AND INDEPENDENT LIVING;
MONICA WHITE, in her official and individual
capacities; JENNIFER GARABEDIAN, in her
official and individual capacities; WASHINGTON
COUNTY MENTAL HEALTH SERVICES INC.;
MARY MOULTON, in her official and individual,
    Defendants.

2:22-cv-188

## VERIFIED COMPLAINT FOR DECLARATORY, DAMAGES, AND INJUNCTIVE RELIEF

NOW COME Plaintiffs, by and through their attorneys, Costello, Valente & Gentry, P.C.,

and complains against Defendants. Without an injunction, John Doe, an individual with a

developmental disability who cannot function without 24-hour staffing and care, will lose his

necessary services and made homeless causing harm to his safety and wellbeing.

## PARTIES

1. Plaintiff John Doe is an adult under guardianship residing in Vermont who has been

    diagnosed with autism spectrum disorder (ASD) and Landau-Kleffner Syndrome.[1]

    Plaintiff's conditions substantially impair his sensor processing, verbal communication

---

[1]     Landau-Kleffner Syndrome (LKS) is a rare, childhood neurological disorder characterized by the sudden or gradual development of aphasia (the inability understand or express language) and an abnormal electro-encephalogram (EEG). The abnormal EEG shows an increase in abnormal brain activity firing (spikes) during sleep that scientists believe impairs memory formation. Typically, those with LKS develop normally but then, between the age of five and seven years old, lose their language skills for no apparent reason, and often suffer from seizures. *See* "Landau-Kleffner Syndrome," *NIH National Institute of Neurological Disorders and Stroke*, available at: https://www.ninds.nih.gov/health-information/disorders/landau-kleffner-syndrome#:~:text=Landau%2DKleffner%20syndrome%20(LKS),electro%2Dencephalogram%20(EEG) (accessed October 17, 2022).

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

ability, and emotional and behavioral regulation to such an extent that he cannot function in the community without the assistance of staff and technological aids.

2. Plaintiff John Doe's current co-guardians are Linda Luxenberg (his mother) and Kelcey Luxenberg (his sister).

3. Plaintiff Linda Luxenberg ("Linda") has advocated on behalf of John Doe in connection with this matter, and as a result, she and John Doe have experienced retaliation.

4. Defendant Vermont Department of Disabilities, Aging, and Independent Living ("DAIL") is a department within the Vermont Agency of Human Services. On information and belief, DAIL receives federal funding.

5. Defendant Monica White is the Commissioner of DAIL.

6.  Defendant Jennifer Garabedian is the Director of DAIL's Developmental Disabilities Services Division.

7. Defendant Washington County Mental Health Services Inc. ("WCMHS") is a non-profit organization in Vermont.  It is a "Designated Agency" as part of Vermont's system of care providing services to people in Washington County with disabilities.[2]  On information and belief, WCMHS receives federal funding.

8. Defendant Mary Moulton is the Executive Director of WCMHS.

## JURISDICTION AND VENUE

9. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

---

[2]      DAIL designates one Designated Agency in each geographic region of Vermont as responsible for ensuring needed services are available through local planning, service coordination, and monitoring outcomes within the region. *See* "Designated Agencies (DA)," *DAIL Developmental Disabilities Services Division*, available at: https://ddsd.vermont.gov/designated-agencies-da (accessed October 17, 2022). There is one designated agency in each of Vermont's 14 counties. *Id.*

10. This Court has supplemental jurisdiction over State law claims pursuant to 28 U.S. C. § 1367.

11. All parties are residents of Vermont and all the acts and omissions in this case occurred within Vermont, making the District of Vermont the proper venue.

## BACKGROUND

12. Congress enacted the ADA in 1990 to "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." *See* 42 U.S.C. § 12101(b)(1). It found that, "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." *Id.* at § 12101(b)(2).

13. For that reason, Congress prohibited discrimination by public entities against individuals with disabilities. *See* 42 U.S.C. § 12132.

14. Title II of the ADA requires states to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d), App. B at 673 (2011). The "most integrated setting" is one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." *Id.*

15. Regulations implementing Title II prohibit public agencies from using "methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination or "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

3

individuals with disabilities[.]" *See* 28 C.F.R. § 35.130(b)(3); *accord* 45 C.F.R. § 84.4(b)(4) (Rehabilitation Act).

16. Discrimination on the basis of disability is also prohibited by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a): "No otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

17. In Vermont, the Developmental Disabilities Act ("the Act") provides that every person with a developmental disability who receives services has the right to:

- Be free from aversive procedures and treatment;

- Privacy, dignity, and humane care;

- Free communication, using their primary mode of communication;

- Maintain contact with family;

- Be free from retaliation for making a complaint, voicing a grievance, recommending changes in policies, or exercising a legal right.

It provides, in addition, that every family member of a person with a developmental disability has the right to be free from retaliation for making a complaint, voicing a grievance, recommending a changing policy, or exercising a legal right.

*See* 18 V.S.A. § 8728(a)-(b).

18. To implement these rights, the Act requires that DAIL continuously "plan, coordinate, administer, monitor and evaluate" services for those in Vermont with developmental disabilities. *Id.* at § 8723.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

4

19. Specifically, the Act mandates that DAIL must provide services for adults that allow them to make decisions for themselves, live in typical homes, and contribute as citizens of the communities where they live. *See* 18 V.S.A. § 8724(2). To that end, DAIL must provide each adult with individualized and family support, in a fashion so that those with disabilities "are not required to move to gain access to needed services, thereby forfeiting natural community support systems." *Id.* at §§ 8724(4)-(9).

20. At all times, the "paramount" concern is for safety and health, so "to ensure the goals of [the Act]," are achieved, DAIL is obligated to ensure trained staff are available to assist those with developmental disabilities. *Id.* at §§ 8724(10)-(12).

21. DAIL oversees the Developmental Disabilities Services Division ("DDSD") serving Vermonters living with developmental disabilities, and Vermonters age 60 and older served under the Older Americans Act (OAA).

22. DAIL provides funds to the Designated Agencies and Specialized Services Agencies to provide direct care and support.

23. Designated Agencies are obligated by DAIL to provide  services to all eligible individuals in each of Vermont's 14 counties (each referred to as a "catchment area"). Designated Agencies must provide services directly or contract with other providers or individuals to deliver support and services consistent with available funding, state and local System of Care Plans and state and federal guidelines.

24. DAIL has adopted rules and procedures for application and certification standards for programs. *See* 18 V.S.A. § 8726. As part of its rules, DAIL requires that local agencies collaboratively form Individual Support Agreements ("ISAs") with the individuals they

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

5

serve, setting forth the specific obligations of the Designated Agency in connection with each disabled individual.

25. WCMHS is the Designated Agency for Washington County, where John Doe resides. Accordingly, WCMHS is obligated to provide adequate services to him and his family which comport within the above-described legal framework.

## **FACTUAL ALLEGATIONS**

### **Marshfield Placement**

26. Plaintiff Doe has received disability services in Vermont for most of his life.

27. Doe lives alone in Marshfield, Vermont, in a home owned and operated by WCMHS.

28. Prior thereto, Doe lived in a house in Waitsfield, Vermont, and was assisted by Upper Valley Services, a Specialized Service Agency funded by DAIL.

29. In May of 2020, Doe experienced a crisis and was transported to Dartmouth-Hitchcock Medical Center ("DHMC"). Thereafter, he was unable to return to Waitsfield, so he was forced to stay in the ED until a residential placement was arranged.

30. When Plaintiff Doe was stuck at DHMC a team, including DAIL, was formed to work towards developing a residential placement for Plaintiff. This planning team has continued to meet, although the members and frequency of meetings have changed. DAIL's engagement with this team has not been consistent, except that Defendant, Jennifer Garabedian has been the member representing DAIL at the regular meetings starting in March 2022.

31. One option the team identified for Doe was a short-term crisis bed owned and operated by the Vermont Crisis Intervention Network ("VCIN"). Linda, who was Doe's sole

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

6

guardian at the time, objected. She expressed concerns that the VCIN crisis bed may not be a safe placement for Doe and could be detrimental to him.

32. As a result, in early August of 2020 (while Doe was still at DHMC) Linda's guardianship was terminated and the Office of Public Guardian—a division of DAIL—was appointed.

33. Doe was thereafter moved to the VCIN crisis bed with his new guardian's approval on or around August 13, 2020. Linda's concerns proved correct; within 72 hours, Doe had to be re-hospitalized.

34. Prior to Doe's discharge from DHMC Mike Chapman, a consultant from the TEACHH Autism Program at the University of North Carolina, made several recommendations regarding appropriate programming and placement for Plaintiff. Chapman's suggestions included a Functional Behavior Analysis to identify the reasons for Doe's chronic behavioral dysregulation and to create an effective plan to manage it.

35. On information and belief, no Functional Behavioral Analysis was conducted (nor were the balance of Chapman's other recommendations).

36. After the failure of the August 2020 VCIN placement, WCMHS and DAIL decided to create a program in Marshfield, Vermont, which led WCMHS to purchase the single family house in which Doe currently resides. (He moved in on September 24, 2020.) The program is funded and supervised by DAIL, while WCMHS is responsible for day-to-day oversight and decision-making.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

37. Doe's home is in a remote area of Marshfield (which, as of 2020, had 1,583 residents[3]). Cameras have been installed in the house (except bedroom and bathroom) so that WCMHS staff can monitor Doe from an attached room inaccessible to him.

38. Doe has needed "two to one" staffing at all times at the Marshfield residence (meaning there are always two staff members available to assist him). However, WCMHS has failed to appropriately staff the program to allow this and relied instead upon VCIN to provide short-term, rotating staff.

Doe's care is based on a needs assessment by WCMHS finding his needs to be significant in most areas, and a behavior support plan developed by WCMHS in August of 2020. Both were approved by DAIL, which allocated over $800,000 annually for services to benefit Doe (likely one of the highest support budgets in Vermont).

### Failure to Provide Services

39. In December of 2017, Melmark New England (an organization providing developmental disability services and assessments) ("Melmark") conducted an evaluation to determine Doe's service needs, to assess his progress, and to make recommendations based on his future needs. Both WCMHS and DAIL had access to the Melmark evaluation.

40. The Melmark evaluation concluded that Doe had significant communication and behavioral barriers. It recommended that the structure of his programming be designed through consultation with experts in autism and severe behavioral challenges, and that Doe's providers should manage the element causing many of his crises—transitions—by

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

---

[3]    *See* U.S. Decennial Census (2020), available at:
https://data.census.gov/cedsci/table?q=Marshfield%20town,%20Washington%20County,%20Vermont&tid=ACSDP5Y2020.DP05 (accessed October 17, 2020).

8

utilizing a visual schedule with carefully-planned, developmentally appropriate options, because:

> Difficulty with transitions is a hallmark of autism and not having a solid transition plan for [Plaintiff's] care places him at risk for decisions being made that are the result of a crisis situation and not of careful, thoughtful planning. It is reasonable to consider a stable living environment such as a residential program, which will be able to consistently meet [Plaintiff's] needs as an option to provide him access, long-term, to a meaningful life that he enjoys.

41. After initiating the program in Marshfield, WCMHS consulted with autism and behavioral specialists and communication specialists. However, on information and belief, contracts with them have been terminated by Defendant Monica White, without implementing the experts' recommendations.

42. For example: as noted above, Doe responds well when he has a calendar to refer to and it is full of events and appointments. (This is also part of Doe's behavior support plan.) But WCMHS does not arrange activities for Doe, and his calendar is mostly blank, even after repeated requests by Linda that WCMHS (which WCMHS said they would do) take steps to fill Doe's schedule.

43. WCHMS has also failed to provide Doe with the tools he requires for another trigger—communication with his staff—even though Doe's current ISA states that "[Plaintiff] can become overstimulated when those working with him use too many (sic) verbal communication, especially when he is escalated."

44. Indeed, Doe's initial behavior support plan (from August of 2020), current support plan, and communication plan all recommend that communication should be in writing or visual.   (Doe communicates effectively with an iPad, whiteboard, or similar device.)

COSTELLO,
VALENTE
& GENTRY,P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

9

However, staff at WCMHS and VCIN often attempt to communicate with Doe verbally, which impedes his ability to communicate and often frustrates him.

45. Melmark conducted another evaluation of Doe in August and September of 2021. It concluded that the ISA and behavior support plan were not being implemented. It noted failures by Doe's staff to utilize nonverbal communication, the lack of an appropriate schedule, and consequential behavioral problems including deterioration of Doe's ability to maintain basic hygiene, routine dysregulation, and troubling behaviors like spending the day pacing around the home.

**2022 Crisis and Hospitalization**

46. In the three months after the second Melmark evaluation concluded that Doe's needs were not being met in Marshfield, neither WCMHS nor DAIL made changes to the program. In January 2022, Doe was triggered and experienced severe behavioral dysregulation, during which he became physically aggressive. He was taken to the ED at Central Vermont Medical Center.

47. Doe was cleared for discharge within 24 hours but due to the lack of a safe place for him to return to, he remained in the ED for approximately one week before WCMHS allowed him back to the Marshfield home.

48. On information and belief, the reason that Doe was not able to return to Marshfield immediately upon being medically cleared was because WCMHS refused to promptly allow it.

**Failures to Implement Doe's ISA**

49. Doe's current ISA is in effect from February 1, 2022 until January 30, 2023, along with a behavior support plan, communication support plan, and transportation plan.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

50. Doe's ISA states that WCMHS will maintain oversight of the residence and support staff; monitor Medicaid services and help as needed; coordinate with a Registered Nurse regarding medication administration oversight; research and coordinate services of a clinical autism specialist and speech-language pathologist; coordinate a sensory evaluation; and coordinate additional services as needed.

51. Although it has been more nearly nine months since the ISA became effective, WCMHS has not provided any coordination with a clinical autism specialist, meaningfully engaged with a speech-language pathologist, or conducted a sensory evaluation.  WCMHS has simultaneously failed to provide enough staff members, and those assigned to assist Doe have been inadequately trained and made basic errors like allowing Doe to stray from their physical proximity, endangering him.

52. In late January of 2022, WCMHS contacted Linda and Kelcey about updating his ISA and stated that the goals from the previous year remained the same; that the ISA would be in place for a year; and that Doe would be evaluated in about 6 months and possibly sooner. However, no reevaluation has been completed since the current ISA became effective in February of 2022.

53. Doe's current ISA provides that staff will support him in engaging in the community and building relationships with community members.

54. However, Doe has not been supported by WCMHS to actively engage or spend time in the community other than with his Linda, whom he has visited regularly since September of 2021.

55. WCMHS has not even provided Doe with a case manager (the last time Doe had one was in September of 2021).

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

56. On information and belief, Defendant Mary Moulton is aware of WCMHS's in the failure to discharge its obligations under Plaintiff's ISA but has not taken any action to resolve the failure.

57. As a result of the failure to implement Doe's ISA, he has not made progress while residing in Marshfield.  Instead, he has engaged in increased amounts of physical aggression and self-injurious behaviors.

**Changes in Guardianship**

58. In May of 2021, guardianship for Doe was transferred from the Public Guardian back to Plaintiff's family, specifically his Aunt and his sister serving as co-guardians.

59. Doe's family and guardians repeatedly requested timely input into crisis situations and involvement in medical appointments from WCMHS.

60. However, they were not informed about meetings and appointments until the same day the occur.  More importantly, they were not informed about incidents of aggression or self-harm for days after they occurred.  This made it difficult or impossible to provide for Doe's care or for his aunt and Kelcey to make informed decisions.

61. Doe's Guardian Ad Litem, Rachel Hickory, told WCMHS staff that Linda had success with Doe in Stowe (which is part of Lamoille County) and that Doe wanted to be more engaged in a community, which was not happening in Marshfield due to its rural nature and the failures by WCMHS and DAIL to implement Doe's ISA.

**Linda is Reappointed Co-guardian and Seeks Improved Services**

62. On August 2, 2022, Guardianship was awarded to Linda to serve as co-guardian along with Kelcey (Doe's Aunt was no longer guardian).

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

12

63. Since then, the co-guardians have made efforts to obtain necessary services for Doe including by transferring his services to a different provider than WCMHS.

64. A meeting with Linda, WCMHS, Doe's Guardian Ad Litem, and other advocates took place on September 7, 2022, to discuss a transfer of Doe out of Marshfield. Keith Grier, representing WCMHS, stated that he had spoken with the Executive Director of Lamoille County Mental Health Services (LCMHS) (the Designated Agency covering services in Lamoille County) about LCMHS undertaking to provide services for Doe.

65. On September 21, 2022, there was another regularly scheduled meeting to discuss a transition of Doe from Marshfield to Lamoille County. It was attended by representatives of WCMHS, Doe's guardians, Plaintiff's guardian ad litem, VCIN, and other advocates for Doe (DAIL, through Defendant Jennifer Garabedian, was invited but did not attend). There, it was agreed that LCMHS and DAIL should be involved in planning any transition to Lamoille. The next day, Doe's guardians, through counsel, sent out meeting notes and copied Ms. Garabedian. The notes also posed several questions that needed to be answered by DAIL to make progress on transition.

66. Between September 7 and September 21, 2022, DAIL did nothing, and no progress was made.

67. On September 27, an employee of WCMHS who was in attendance at the September 21st meeting, emailed to make it clear that DAIL's lack of involvement was impeding the transfer of Doe's services:

> **We'll need DAIL's** involvement in any concrete planning for a family managed or shared managed program. DAIL has your minutes as well as Linda's recent communications. I'm hopeful these missives and questions will help us to determine options and work toward clarity based on what is being provided.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

> WCMHS has spoken to LCMHS and received word that they do not have resources readily available. LCMHS is aware of the interest for a shift in designated agencies and DAIL is aware of this, as well.
>
> WCMHS is unable to staff a program based in Stowe, be it long or short term; we are bringing Travis to Linda's home when directed and when able to do so. Recent communications indicate that Linda wants to hire her own staff. How that can happen remains unclear. I realize we have another week before we are scheduled to meet again. **Our attendance will be predicated on DAIL's attendance.** We certainly do not want to continue to go in a circle on the same questions and respect the need for answers. We will reach out to DAIL during the week to seek further clarification on their position given what we are reading from Linda. While we receive multiple communications daily with descriptions of [Plaintiff's] care that do not match our experience as caring staff members, we do our best to comply and rely on DAIL for system guidance.

(Emphasis added.)

68. In the period of DAIL's unresponsiveness, LCMHS communicated with Doe's guardians on or around September 9, 2022, indicating that it was short-staffed and unable to provide Doe with adequate services.

69. The guardians identified several potential individuals available and qualified to work with Doe, including as case manager, and gave these names to WCMHS and DAIL. Their suggestions have been ignored.

70. On or around September 27, 2022, counsel for Plaintiff spoke with Stuart Schurr, General Counsel of DAIL, about transition planning for services for Plaintiff. After that meeting, counsel for Plaintiff sent Attorney Schurr a draft transition proposal as Attorney Schurr had suggested to start facilitating a transition. DAIL did not respond to the draft plan until October 4, 2022, stating: "DAIL staff have reviewed the elements of your 'transition proposal,' and, while keeping in mind your acknowledgement that it may not be

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

14

comprehensive, DAIL is concerned that it fails to identify many of the essential components necessary for a meaningful conversation regarding [Plaintiff]'s transition from one community-based program to another..."

71. However, DAIL proposed no alternative way to facilitate Doe's transition. DAIL representatives stated that they would not be a part of transition planning because that was not the role of the agency, but they could approve plans and address conflicts as they arose.

### WCMHS and DAIL Seek to Terminate Services

72. Although there remains no transition plan in place, on or around October 3, 2022, Defendant Mary Moulton sent Doe's guardians an email titled *WCMHS Notice of Termination*. Copied were Defendants Monica White and Jennifer Garabedian of DAIL. The Notice stated that all WCMHS services would be terminated by November 3, 2022. Moulton said that the reason WCMHS needed to terminate services was because Doe's guardians had complained about WCMHS services, especially Linda's "strongly voiced displeasure and mistrust of {WCMHS] staff and programming. WCMHS provided no evidence that it was complying with the ISA. Moulton added that WCMHS and DAIL would cooperate with transition planning, but did not say how.

73. No additional information was provided regarding the decision nor required information about Doe's appeal and due process rights.

74. Because Doe's residence is a component of the services provided to him, terminating services render him homeless, endangering the safety of Plaintiff.

75. On information and belief, Defendants Monica White and Jennifer Garabedian were involved in the decision to terminate Doe's services.

COSTELLO,
VALENTE
& GENTRY,P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

15

76. Neither DAIL nor WCMHS have claimed any justification for terminating Doe's service needs other than Linda's strongly-voiced objections (and Doe's alleged awareness thereof).

77. No communication about terminating services or possibly terminating services due to Linda's strongly voiced objections was provided to Doe's guardians or counsel before above referenced the October 3rd Notice of Termination.

78. On October 4, 2022, Attorney Schurr for DAIL, knowing that WCMHS had sent the above-referenced termination letter, emailed Doe's counsel stating (among other things) that "while DAIL is available to provide support, as needed, it remains [DAIL's] expectation that the guardians will take the lead on the transition to an alternate community-based program, with WCMHS as the referring agency. Accordingly, DAIL has taken no steps to invite LCMHS to join tomorrow's discussion."

79. On October 5, 2022, Linda had a meeting with representatives of DAIL, including Defendants Jennifer Garabedian and Mary Moulton (for WCMHS). At that meeting, DAIL agreed that Doe should not be without shelter as of November 3, but offered no concrete plans for establishing services or housing elsewhere other than a possible crisis bed somewhere in Lamoille County. WCMHS had no suggestions for where Doe will reside after of November 3, nor who will provide services. All agreed that LCMHS (who had been invited but, as set forth above, declined to attend) needed to be a part of the meeting. It was decided that Doe's guardians, WCMHS and LCMHS would meet and work towards a transition plan and submit that plan, or a status update, to DAIL by October 12.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

16

80. After that meeting, also on October 5, Doe's guardians, through counsel, emailed
WCMHS and LCMHS to attempt to schedule a transition plan meeting and sent them a
draft transition proposal.  In the nearly two weeks since, while there have been a few
emails about trying to schedule a meeting and Doe's guardians have made themselves
readily available but neither WCMHS nor LCMHS have agreed to a meeting.

81. On October 7, 2022, Counsel for Doe filed an appeal of WCMHS termination decision in
the Vermont Human Services Board and requested that services remain in place in the
interim. In the appeal, Doe asserted that the termination of services would leave him
homeless and without any staff even though he has needed "two to one" staffing for
years. Both DAIL and WCMHS were sent the appeal yet neither have responded.

82. The Vermont Human Services Board, which like DAIL is also a part of the Agency of
Human Services, scheduled the first Status Conference in the appeal for November 4,
2022—the day after the termination that will render him homeless and without support.
There is thus no possibility an appeal will enable Doe to maintain housing and services
while the appeal is pending, exposing him to substantial risk of irreparable harm.

83. On October 12, 2022, Counsel for WCMHS wrote and filed an unsolicited letter in
Washington County Superior Court – Probate Division (where Doe's guardianship action
has been adjudicated).  Although no matter was currently pending, WCMHS advised the
Court that their decision to terminate services for Doe was "preceded by much
deliberation, thought and in collaboration with representatives from DAIL." This
apparently refers to Defendant Monica White, who—like the rest of DAIL—has made no
effort to facilitate transition planning despite the above-described repeated efforts of
counsel for Doe.

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

17

84. To wit: after receiving no meaningful response from representatives from WCMHS or LCMHS on October 11, 2022, Doe guardians, through counsel, Attorney Schurr informing him that no progress had been made in the past week towards developing a transition and necessary services for Plaintiff and asking what DAIL can offer to help given DAIL's previous invitation to help if needed.  DAIL has not responded.

85. On October 12, 2022, after many requests by Doe's guardians for a meeting with LCMHS and WCMHS to work on possible transition planning for Doe, LCMHS emailed his guardians and representatives from WCMHS, stating:

> We have been working away at getting further clarification from DAIL on the current services and what the program array is and could be for [Doe]. As well we have been meeting with VCIN and WCMHS to determine what has been successful from their perspective.  Thus, we have been in a collection mode to respond to the myriad of concerns and ideas in the document you sent.  By the end of the day I will be forwarding to you a response of what we are hoping will move us all to a clear and useful plan for success in the next **months** ahead."

(emphasis added)

86. On October 13, 2022, Doe's guardians, through counsel, replied to LCMHS and WCMHS and suggested times to meet.

87. As of filing, Plaintiff's guardians have not received any reply from either LCMHS or WCMHS regarding the scheduling of a meeting.

88. It appears that DAIL is influencing LCMHS's non-response and hampering their ability to provide services—and a home—for Doe.

89. Instead of working collaboratively with the guardians to seek an appropriate transition plan for Plaintiff, on the afternoon of October 17, DAIL filed an emergency Motion in the Probate Division to remove Plaintiff's guardians and appoint itself as guardian.

COSTELLO,
VALENTE
& GENTRY,P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

DAIL's primary argument is that Linda is not working well with Plaintiff's service providers.

90. There remains no plan in place to provide services for Doe.

91. There remains no plan in place to develop or provide necessary services or a home for Doe.

92. Plaintiff suffered and is likely to suffer immediate, irreparable harm due to Defendants' acts and omissions.

## COUNT I: PROCEDURAL DUE PROCESS

93. Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

94. Defendants, Monica White, Jennifer Garabedian, WCMHS, and Mary Moulton's, proposed forced removal of Plaintiff from his home without affording him the opportunity to contest his removal and without notice of his rights, will violate his procedural due process rights pursuant to the Fourteenth Amendment of the United States Constitution and Article 4 of the Vermont Constitution.

95. Defendants, Monica White, Jennifer Garabedian, WCMHS, and Mary Moulton's, proposed termination of healthcare services and supports without consent and without affording him the opportunity to contest this termination and without notice of his rights, will violate his procedural due process rights pursuant to the Fourteenth Amendment of the United States Constitution and Article 4 of the Vermont Constitution.

96. Defendants are subject to an action for injunctive relief and damages caused by their violation of the United States Constitution pursuant to 42 U.S.C. § 1983 and violation of the Vermont Constitution through an independent cause of action under the common law.

97. As a result of Defendants' acts and omissions, Plaintiff will be harmed.

COSTELLO,
VALENTE
& GENTRY, P.C

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

## COUNT II: MEDICAID DUE PROCESS

98. Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

99. Defendants, Monica White, Jennifer Garabedian, WCMHS, and Mary Moulton's proposed forced termination of all Medicaid services as of November 3, 2022 will violate Plaintiff's right to a fair hearing before termination of services as provided by 42 U.S.C. § 1396a(a)(3).

100.    Defendants have not provided any opportunity for an internal appeal with DAIL and have not agreed to continue services while an appeal is pending. Defendants are therefore depriving Plaintiff of due process without providing him sufficient notice nor a chance to be heard before terminating his services.

101.    Defendants are subject to an action for injunctive relief and damages caused by their violation of the United States Constitution pursuant to 42 U.S.C. § 1983 and violation of the Vermont Constitution through an independent cause of action under the common law.

102.    As a result of Defendants' acts and omissions, Plaintiff will be harmed.

## COUNT III: REHABILITATION ACT

103.    Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

104.    Defendants', who receive federal funding, decision to terminate services provided to Plaintiff as of November 3, 2022, places him at risk of institutionalization in violation of his rights pursuant to the Rehabilitation Act, 29 U.S.C. § 701 et seq.

105.    Defendants' failure to provide adequate services and supports to Plaintiff over the last two years and failure to accommodate his disabilities have been detrimental placing him at a greater risk of institutionalization. The lack of services and community

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

engagement has also prevented him from being in the most community integrated setting in violation of his rights as a person with disabilities provided for by the Rehabilitation Act.

106.     Defendant WCMHS has, and continues to, frequently fail to reasonably accommodate Plaintiff's communication impairments by communicating with writing and visuals and instead insists on communicating verbally knowing that is not an effective means of communication for him and often fails to provide him with necessary communication devices causing him to be deprived of equal access to communication in violation of his rights pursuant to the Rehabilitation Act.

107.     As a result of the Defendants' acts and omissions, Plaintiff has been harmed and will be harmed.

## COUNT IV: AMERICANS WITH DISABILITIES ACT

108.     Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

109.     Defendant, DAIL's, decision and agreement to terminate services and housing provided to Plaintiff as of November 3, 2022, places him at substantial risk of institutionalization in violation of his rights to receive services in the most integrated setting provided by the Americans with Disabilities Act, 42 USCS § 12132.

110.     As a result of the Defendants' acts and omissions, Plaintiff will be harmed.

## COUNT V: VERMONT FAIR HOUSING AND PUBLIC ACCOMMODATIONS ACT

111.     Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

112.     Defendants', DAIL and WCMHS, decision to terminate services provided to Plaintiff as of November 3, 2022, places him at risk of institutionalization depriving of his right to receive goods, services, privileges, advantages, accommodations, and reside

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

in the most integrated setting that is appropriate for his needs in violation of his rights pursuant to the Vermont Fair Housing and Public Accommodation Act, 9 V.S.A. § 4502.

113.    Defendants' failure to provide adequate services, supports, training, access to specialists to Plaintiff over the last two years and failure to accommodate his disabilities have rendered him at a greater risk of institutionalization.

114.    The lack of services and community engagement has resulted in him being mostly isolated at home, which has prevented, and continues to prevent him from receiving services in the most community integrated setting in violation of his rights as a person with disabilities provided for by the Vermont Fair Housing and Public Accommodations Act.

115.    Defendant WCMHS has, and continues to, frequently fail to reasonably accommodate Plaintiff's communication impairments by communicating with writing and visuals and instead insists on communicating verbally knowing that is not an effective means of communication for him and often fails to provide him with necessary communication devices causing him to be deprived of equal access to communication and socialization in violation of his rights pursuant to the Vermont Fair Housing and Public Accommodations Act.

116.    As a result of the Defendants' acts and omissions, Plaintiff has been harmed and will be harmed.

## COUNT VI: NEGLIGENCE

117.    Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

118.    Defendants Monica White and Jennifer Garabedian of DAIL, as the Commissioner of DAIL and the director of developmental disability services,

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05402

802-257-5533

22

respectively, have a duty pursuant to 18 V.S.A. §§ 8723, 8724, 8726 to plan, coordinate, administer, monitor, and evaluate the services that WCMHS provides to Plaintiff.

119.     Defendants have failed in that duty to Plaintiff, which has caused him, and continues to cause him, harm.

120.     Defendant WCMHS has a duty to provide adequate services and supports to Plaintiff as they agreed to in Plaintiff's ISA. WCMHS has failed in this duty causing harm to Plaintiff.

121.     As a result of the Defendants' acts and omissions, Plaintiff has been harmed and will be harmed.

## COUNT VII: RETALIATION

122.     Plaintiff incorporates the foregoing paragraphs as though fully contained herein.

123.     Both Plaintiffs Doe and Linda Luxenberg have been and are being retaliated against by Defendants WCMHS and DAIL for complaining and grieving Plaintiff's services and requesting improved services or a move to a different program in violation of 18 VSA 8728(b).

124.     As a result of the Defendants' acts and omissions, Plaintiffs have been harmed and will be harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court issue the following relief:

1.  A declaratory judgement that the actions of Defendants described herein were unlawful and those acts they plan to do are unlawful;

2.  Injunctive relief preventing Defendants from removing Plaintiff from his home and terminating his services without consent by his guardians;

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

23

3.  Injunctive relief requiring the Defendants to take all reasonable steps to develop an adequate transition plan of services for Plaintiff including encouraging other necessary providers to engage in program development and cooperating with Plaintiff's guardians in that process;

4.  Injunctive relief requiring Defendant DAIL to fund the appropriate placement identified and developed with guidance from Plaintiff's guardians and consented to by his guardians;

5.  An award of damages adequate to compensate Plaintiff for harm suffered from Defendant's unlawful actions;

6.  An award of punitive damages;

7.  An award of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 9 V.S.A. § 4506; and

8.  Other relief as the Court deems just and proper under the circumstances of this case.

Dated this 18th day of October, 2022.

By:

Linda Luxenberg, Guardian of Plaintiff

STATE OF VERMONT
_LAMOILLE_ COUNTY, SS.

At _STOWE_, Vermont, this 18th day of October, 2022 _LINDA LUXENBERG_ did personally appear before me and signed the foregoing instrument and acknowledged the same to be her free act and deed.

Before me, _____, Notary Public
Commission Expires: _____

#157.0005200

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

24

## ENTRY ON APPEARANCE

NOW COMES Zachary Hozid of Costello, Valente and Gentry, P.C., and enters his

appearance for Plaintiff.

## REQUEST FOR TRIAL BY JURY

NOW COMES Plaintiff, and respectfully requests a trial by jury.

DATED at Brattleboro, County of Windham, and State of Vermont, this 18th day of

October, 2022.

By: __/s/ Zachary Hozid_____

Zachary Hozid
COSTELLO, VALENTE & GENTRY, P.C.
Attorneys for Plaintiff
51 Putney Road
P.O. Box 483
Brattleboro, VT 05302
802 257-5533
hozid@cvglawoffice.com

COSTELLO,
VALENTE
& GENTRY, P.C.

51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO,
VERMONT
05302

802-257-5533

25